UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LIONEL AND TAMMY ALFORD, as
Co-trustees of the LIONEL D. ALFORD,
JR. AND TAMMY NIX ALFORD
REVOCABLE TRUST,

Plaintiffs,

v. CASE NO. 3:16-cv-00362-MCR-CJK

WALTON COUNTY, FLORIDA,

Defendant.
____________________________________/

**DEFENDANT WALTON COUNTY'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant WALTON COUNTY, FLORIDA ("County"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 56 and N.D. Fla. Loc. R. 7.1 and 56.1, hereby moves for entry of final summary judgment on Count IV (Declaratory Judgment *Void Ab Initio* Legislative Enactment) of the Plaintiffs' Second Amended Complaint (Doc. 43), and, as grounds therefor, states as follows:

## I.

## INTRODUCTION

1. On December 20, 2016, the Plaintiffs filed a four-count Second Amended Complaint against the County, challenging the County's adoption of an amendment to the Walton County Waterways and Beach Activities Ordinance on June 14, 2016 ("Beach Activities Ordinance"), and the County's adoption of Ordinance 2016-23 regarding the public's long-standing customary use of the dry sand areas of all of the beaches in Walton County for recreational purposes ("Customary Use Ordinance") on October 25, 2016. (Doc. 43). Count IV of the Plaintiffs' Second Amended Complaint (Declaratory Judgment *Void Ab Initio* Legislative Enactment) involves a facial challenge to the Customary Use Ordinance, alleging that the Customary Use Ordinance is an ultra vires act, and, thus, void *ab initio*.

2. The County is entitled to summary judgment on Count IV of the Plaintiffs' Second Amended Complaint because:

A. Count IV of the Plaintiffs' Second Amended Complaint is not ripe for review, and, thus, this Court lacks jurisdiction to consider the same; and

B. Even assuming Count IV of the Plaintiffs' Second Amended Complaint is ripe for review, which it is not, the County acted within its lawful home rule powers pursuant to Florida law in adopting the Customary Use Ordinance.

Accordingly, the Court should grant the County's Motion for Partial Summary Judgment.

## II.

## THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT

The following facts are not in dispute:

3. On October 25, 2016, following a duly noticed public hearing and the receipt of public comment, the Walton County Board of County Commissioners ("BOCC") voted to adopt Ordinance No. 2016-23 – *i.e.*, the Customary Use Ordinance. (Doc. 43-1). The title to the Customary Use Ordinance reads as follows:

> AN ORDINANCE OF WALTON COUNTY, FLORIDA, PROTECTING THE PUBLIC'S LONG-STANDING CUSTOMARY USE OF THE DRY SAND AREAS OF THE BEACHES; PROVIDING FOR A BUFFER AREA AROUND PRIVATE PERMANENT STRUCTURES; PROVIDING FOR PENALTIES FOR VIOLATION OF THIS ORDINANCE; PROVIDING AUTHORITY, SEVERABILITY, AND AN EFFECTIVE DATE.

(*Id.* at 1).

4. The recitals of the Customary Use Ordinance reflect that the BOCC expressly found that "the recreational use of the dry sand areas of all of the beaches in the County is a treasured asset of the County which is utilized by the public at large"; "the dry sand areas of all of the beaches in the County are a vital economic

asset to the County"; and "the public at large, including residents and visitors to the County, have utilized the dry sand areas of all of the beaches in the County for recreational purposes since time immemorial." (*Id*.).

5. In adopting the Customary Use Ordinance, the BOCC concluded that that "the research and analysis of Dr. James Miller, as well as the testimony of citizens of the County, confirm that the doctrine of customary use has applied to all of the beaches in Walton County since before 1970." (*Id*.).

6. Consistent with the BOCC's factual findings set forth in the recitals and the County's expressed "desire[] to ensure that the public's long-standing customary use of the dry sands areas of all of the beaches in Walton County for recreational purposes is protected," Section 2 of the Customary Use Ordinance, entitled "Regulation of Dry Sand Areas," provides in pertinent part:

> 1. The public's long-standing customary use of the dry sand areas of all of the beaches in the County for recreational purposes is hereby protected. Except as stated in Paragraph 3, no individual, group, or entity shall impede or interfere with the right of the public at large, including the residents and visitors of the County, to utilize the dry sand areas of the beach that are owned by private entities for recreational purposes.

(*Id*. at 1-2).[1]

---

[1] Paragraph 3 of Section 2 of the Customary Use Ordinance generally establishes "a fifteen (15) foot buffer zone located seaward from the toe of the dune

7. The Customary Use Ordinance recognizes that "the owners of property that contains a portion of the dry sand areas of the beach may make any use of their property which is consistent with such public use and not calculated to interfere with the exercise of the right of the public to enjoy the dry sand area as a recreational adjunct of the wet sand or foreshore area." (*Id*. at 2).

8. Although adopted at the BOCC's meeting on October 25, 2016, the Customary Use Ordinance is not yet effective and does not apply, and the County has not applied the same, to any property in the County, including the Plaintiffs' property. Indeed, by its express terms, the Customary Use Ordinance does not become effective until April 1, 2017. (*Id*. at 3).

9. Immediately following the adoption of the Customary Use Ordinance, the BOCC voted to "form a committee" to hold multiple public workshops on the Customary Use Ordinance and "to formulate suggestions and ideas for consideration by the board to amend the ordinance." (Ex. 1 at 11-12).[2] The BOCC directed such

---

or from any permanent habitable structure owned by a private entity that is located on, or adjacent to, the dry sand areas of the beach, whichever is more seaward." (Doc. 43-1 at 2-3).

[2] An excerpt of the Minutes of the Meeting of the Walton County Board of County Commissioners held on October 25, 2016, is attached hereto as Exhibit 1. The full minutes of such meeting are accessible online at https://walton.legistar.com/View.ashx?M=M&ID=446850&GUID=D7EB5CC0-E044-4C27-BB9D-D30E2105C200.

committee to "make their recommendations by March 1st in order to apply the changes to the ordinance before the April 1st effective date." (*Id*.).

**III.**

## <u>MEMORANDUM OF LAW</u>

The County seeks summary judgment on Count IV of the Plaintiffs' Second Amended Complaint, which challenges the County's Customary Use Ordinance as an ultra vires act. In so doing, the County maintains that there are no disputed issues of material fact and it is entitled to final summary judgment on Count IV as a matter of law because:

A. Count IV of the Plaintiffs' Second Amended Complaint is not ripe for review, and, thus, this Court lacks jurisdiction to consider the same; and

B. Even assuming Count IV of the Plaintiffs' Second Amended Complaint is ripe for review, which it is not, the County acted within its lawful home rule powers pursuant to Florida law in adopting the Customary Use Ordinance.

Accordingly, the Court should grant the County's Motion for Partial Summary Judgment.

## A.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(a). Generally, the party moving for summary judgment has the initial burden to prove the nonexistence of any genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. However, once the movant satisfies the initial burden by demonstrating the nonexistence of any genuine issue of material fact, the opposing party must present evidence sufficient to reveal a genuine issue – it is not enough for the opposing party merely to assert that a genuine issue of material fact does exist. *See Moss v. Gradia*, 2010 WL 337603, at *1 (N.D. Fla. Jan. 21, 2010) ("[The nonmoving party] must show more than the existence of a 'metaphysical doubt' regarding material facts, and a 'scintilla' of evidence is insufficient.") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**B.**

**<u>THE PLAINTIFFS' CLAIM IS NOT RIPE FOR JUDICIAL REVIEW</u>**

As a threshold matter, the County submits that the Plaintiffs' challenge to the Customary Use Ordinance is not ripe for judicial review, and, thus, this Court lacks jurisdiction. On this basis alone, the Court should grant final summary judgment on Count IV of the Plaintiffs' Second Amended Complaint in favor of the County.

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction[,] possess[ing] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). In this regard, "[i]t is to be presumed that a cause lies outside this limited jurisdiction" and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

Ripeness principles "originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." *Elend v. Basham*, 471 F.3d 1199, 1204-05 (11th Cir. 2006). Ripeness is a "prerequisite to federal jurisdiction" and, "[i]f a claim is not ripe, the district court lacks jurisdiction to issue a ruling on the merits and therefore must

dismiss that claim without prejudice." *Novak v. Safeco Ins. Co. of Ill.*, 94 F. Supp. 3d 1267, 1269 (M.D. Fla. 2015). The ripeness of a claim is a legal question. *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d 1349, 1356 (11th Cir. 2013).

In considering whether a claim is ripe, a court considers both "the hardship that a plaintiff might suffer without court redress" and "the fitness of the case for judicial decision." *Elend*, 471 F.3d at 1211. In this regard, courts have reiterated that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998).

Turning to the instant case, Section 5 of the Customary Use Ordinance, entitled "Effective Date," states that "[t]his Ordinance shall become effective on April 1, 2017." (Doc. 43-1 at 3). In other words, the Customary Use Ordinance is ***not*** presently effective or otherwise applicable to ***any*** property, including the Plaintiffs' property. Thus, contrary to any attempt by the Plaintiffs to suggest otherwise, the Plaintiffs are not presently suffering any hardship, nor will they suffer any hardship, without court redress, as it is indisputable that the Customary Use Ordinance is not effective and the County has not applied the same to any property.

Moreover, as previously discussed, the Customary Use Ordinance is currently undergoing further review and may be revised, or even possibly repealed, prior to its effective date. Indeed, immediately upon its adoption of the Customary Use

Ordinance, the BOCC voted to "form a committee" to hold multiple public workshops "to formulate suggestions and ideas for consideration by the board to amend the ordinance." (Ex. 1 at 11-12). In so doing, the BOCC directed such committee to "make their recommendations by March 1st in order to apply the changes to the ordinance before the April 1st effective date." (*Id.*). Thus, the Customary Use Ordinance may not ever go into effect or, if it does, it may include material and substantive changes not presently before the Court.

Simply put, the Plaintiffs' challenge to the Customary Use Ordinance "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas*, 523 U.S. at 300. Consequently, the Plaintiffs' claim is not ripe for adjudication and this Court lacks jurisdiction to consider the same.[3] *Novak*, 94 F. Supp. 3d at 1269.

In sum, it is indisputable that the Plaintiffs will suffer no harm from this Court abstaining from consideration of Count IV as the Customary Use Ordinance is not presently effective or otherwise applicable to any property. Moreover, the matter is

[3] The Plaintiffs' reliance upon *Rubenstein v. The Fla. Bar*, 69 F. Supp. 3d 1331 (S.D. Fla. 2014), in prior filings to suggest that the BOCC's establishment of a committee to review and make recommendations regarding the Customary Use Ordinance does not alter the fitness of the Plaintiffs' claim for judicial review is misplaced. Unlike the instant case, where it is indisputable that the Customary Use Ordinance is not effective and has not been applied by the County to any property, the advertising rules at issue in *Rubenstein* were in effect and had been applied. Thus, *Rubenstein* is factually and legally distinguishable from the instant case.

not ripe for adjudication as the Customary Use Ordinance may never even become effective or otherwise apply to the Plaintiffs' property. Accordingly, on this basis alone, the County is entitled to final summary judgment in its favor on Count IV of the Plaintiffs' Second Amended Complaint.

## C.

## THE COUNTY WAS AUTHORIZED PURSUANT TO ITS BROAD HOME RULE POWERS UNDER FLORIDA LAW TO ADOPT THE CUSTOMARY USE ORDINANCE

Even assuming Count IV of the Plaintiffs' Second Amended Complaint is ripe for review, which the County submits it is not, the County is nevertheless entitled to final summary judgment on such claim because the County, as a matter of law, was authorized to adopt the Customary Use Ordinance pursuant to its broad home rule powers. Accordingly, on this additional basis, the Court should grant final summary judgment in the County's favor on Count IV of the Plaintiffs' Second Amended Complaint.

Pursuant to the Florida Constitution, a county, such as Walton County, has broad powers of self-governance. Art. VIII, § 1, Fla. Const. Consistent with this grant of self-governance, the board of county commissioners of a non-charter county "may enact . . . county ordinances not inconsistent with general or special law. . . ." *Id*. at § 1(f); *see also Santa Rosa Cnty. v. Gulf Power Co.*, 635 So. 2d 96, 99 (Fla. 1st DCA 1994) (recognizing "the broad scope of home-rule authority conferred upon

non-charter counties"); *Fillingim v. State*, 446 So. 2d 1099, 1102 (Fla. 1st DCA 1984) ("Non-chartered counties . . . are vested with broad powers of self-government under section 1(f); the only expressed limitation upon their power to act is that their ordinances be not inconsistent with general or special law. . . .").[4]

The broad "home rule" powers afforded a county by the Florida Constitution are implemented and codified in Section 125.01, *Florida Statutes*. In this regard, Section 125.01(1), *Florida Statutes*, provides:

> (1) The legislative and governing body of a county shall have the power to carry on county government. ***To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to***:
>
> * * *
>
> (f) ***Provide*** parks, preserves, playgrounds, ***recreation areas***, libraries, museums, historical commissions, and other recreation and cultural facilities and programs.
>
> * * *
>
> (h) ***Establish***, coordinate, and enforce ***zoning*** and such business ***regulations as are necessary for the protection of the public***.
>
> * * *

[4] A general law is one that "operates universally throughout the state, uniformly upon subjects as they may exist throughout the state, or uniformly within a permissible classification. . . ." *Dep't of Bus. Regulation v. Classic Mile, Inc.*, 541 So. 2d 1155, 1157 (Fla. 1989). A special law, on the other hand, "is one relating to, or designed to operate upon, particular persons or things. . . ." *Id.*

> (t) ***Adopt ordinances*** and resolutions necessary for the exercise of its powers ***and prescribe fines and penalties for the violation of ordinances*** in accordance with law.
>
> * * *
>
> (w) ***Perform any other acts not inconsistent with law***, which acts are in the common interest of the people of the county, ***and exercise all powers and privileges not specifically prohibited by law***. . . .

(Emphasis supplied).

With respect to the above, Section 125.01(3)(a), *Florida Statutes*, expressly states that the enumerated power in the statute is ***not*** "exclusive or restrictive, but is deemed to incorporate all implied powers necessary or incident to carrying out such powers enumerated. . . ." Moreover, Section 125.01(3)(b), *Florida Statutes*, provides that "[t]he provisions of this section shall be ***liberally construed*** in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution." (Emphasis supplied).

Under Florida law, "[a] regularly enacted ordinance will be presumed to be valid until the contrary is shown, and a party who seeks to overthrow such an ordinance has the burden of establishing its invalidity." *Lowe v. Broward Cnty.*, 766 So. 2d 1199, 1203 (Fla. 4th DCA 2000). In *Phantom of Brevard, Inc. v. Brevard County*, 3 So. 3d 309 (Fla. 2008), the Florida Supreme Court explained that

> there are two ways that a county ordinance can be inconsistent with state law and therefore unconstitutional. First, a county cannot legislate in a field if the subject area has been preempted to the State. Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature. Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute.

*Id*. at 314 (internal citations and quotations omitted); *see also Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010) ("A local government enactment may be inconsistent with state law if (1) the Legislature 'has preempted a particular subject area' or (2) the local enactment conflicts with a state statute.").

Florida law recognizes two (2) types of preemption: express or implied. *Browning*, 28 So. 3d at 886. "Express preemption requires a specific legislative statement; it cannot be implied or inferred." *Id*. Implied preemption, on the other hand, may be "found to exist only in cases where the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *Lowe*, 766 So. 2d at 1207 (quoting *Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 831 (Fla. 1st DCA 1996)); *see also Browning*, 28 So. 3d at 886.

Turning to the instant case, the Plaintiffs have not identified in either their Second Amended Complaint or their subsequent filings, nor can they identify, any inconsistent state law which would make the Customary Use Ordinance ultra vires. Additionally, the Plaintiffs have not identified in either their Second Amended Complaint or their subsequent filings, nor can they identify, any state law which either expressly or impliedly preempts the County's adoption of the Customary Use Ordinance.

Simply put, as a matter of law, the County's adoption of the Customary Use Ordinance does not exceed and is not otherwise contrary to the broad home rule authority granted to the County pursuant to Article VIII, Section 1(f) of the Florida Constitution and Section 125.01, *Florida Statutes*. As the Florida Supreme Court succinctly stated in *Speer v. Olson*, 367 So. 2d 207 (Fla. 1978):

> Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of [Section 125.01(1), *Florida Statutes*], has full authority to act through the exercise of home rule power.

*Id*. at 211; *see also Santa Rosa Cnty.*, 635 So. 2d at 99 ("The only limitation on a county's implied power to act occurs if there is a general or special law clearly inconsistent with the powers delegated."); *Fillingim*, 446 So. 2d at 1102-03 (holding "ordinance as adopted cannot be considered an ultra vires act" where it was "not inconsistent with general or special law"). Consequently, the Plaintiffs' contention

in Count IV of their Amended Complaint that the County's adoption of the Customary Use Ordinance is an ultra vires act, and, thus, invalid is without merit as a matter of law.

Notwithstanding and contrary to the broad home rule authority granted to the County by Article VIII, Section 1(f) of the Florida Constitution and Section 125.01, *Florida Statutes*, the Plaintiffs contend in their Second Amended Complaint and their subsequent filings that the public's customary use of the County's beaches may only be established by a court of law, and, thus, the County allegedly exceeded its authority in adopting the Customary Use Ordinance. As discussed above, however, a local ordinance cannot be considered ultra vires pursuant to Florida law unless it is inconsistent with general or special law. Thus, as a matter of law, the Plaintiffs' "judicial determination" argument provides no basis for invalidating the Customary Use Ordinance as ultra vires.

Moreover, even assuming the Plaintiffs' "judicial determination" argument was not without merit as a matter of law, which it is, none of the cases the Plaintiffs rely upon limit the County's previously-discussed home rule authority or otherwise expressly prohibit the County's adoption of the Customary Use Ordinance. For instance, in *City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73 (Fla. 1974), the plaintiff filed an action for declaratory judgment and injunctive relief to challenge the construction of an observation tower on the dry sandy area of the

defendant's beachfront property, arguing the public had acquired a prescriptive easement to use such property. *Id.* at 74. Although the Florida Supreme Court rejected the plaintiff's claim of a prescriptive easement, the Court held that the public had the right to use the dry sandy area of the defendant's property pursuant to the doctrine of customary use. *Id*. at 78.

In approving of the doctrine of customary use as a means "to afford the [public] rights in beach property," the Florida Supreme Court recognized that "[n]o part of Florida is more exclusively hers, nor more properly utilized by her people than her beaches" and that "[t]he interest and rights of the public to the full use of the beaches should be protected." *Id*. at 75, 77-78. Consistent therewith, the Florida Supreme Court held:

> If the recreational use of the sandy area adjacent to mean high tide has been **[1]** ancient, **[2]** reasonable, **[3]** without interruption and **[4]** free from dispute, such use, as a matter of custom, should not be interfered with by the owner. However, the owner may make any use of his property which is consistent with such public use and not calculated to interfere with the exercise of the right of the public to enjoy the dry sand area as a recreational adjunct of the wet sand or foreshore area.

*Id*. at 78 (internal brackets and numbering added). Significantly, however, and contrary to any attempt by the Plaintiffs to suggest otherwise, nothing in *Tona-Rama* limits the County's broad home rule authority or otherwise expressly prohibits the County's adoption of the Customary Use Ordinance at issue in this case.

Likewise, *Reynolds v. County of Volusia*, 659 So. 2d 1186 (Fla. 5th DCA 1995), and *Trepanier v. County of Volusia*, 965 So. 2d 276 (Fla. 5th DCA 2007), upon which the Plaintiffs also rely, are inapposite. In *Reynolds*, the Florida Fifth District Court of Appeal suggested, in dicta, that customary use needs to be established on a parcel-by-parcel basis. *Reynolds*, 659 So. 2d at 1190. The Fifth District, however, revisited such dicta in *Trepanier*, holding that customary use is more appropriately evaluated and established on a regional basis. *Trepanier*, 965 So. 2d at 289-90. Significantly, nothing in *Reynolds* or *Trepanier* in any way limits the County's home rule authority or otherwise expressly prohibits the County's adoption of the Customary Use Ordinance at issue in the instant case.[5]

With regard to the above, it also bears noting that, in both *Reynolds* and *Trepanier*, the local government raised customary use as an affirmative defense to the plaintiffs' inverse condemnation claims. Under such circumstances and much like any other lawsuit in which an affirmative defense is asserted, it necessarily

[5] The court recognized in *Trepanier* that Volusia County's Charter and its Beach Code provide that, based upon "customary access and use," the public has "the right of access to the beach and a right to use the beach for recreation and other customary purposes" and the county is directed to "protect and enforce the public's customary rights of beach access and use." *See* § 205.1, Volusia County Charter and § 20-82, Volusia County Code of Ordinances (available at https://www.municode.com/library/fl/volusia_county/codes/code_of_ordinances?nodeId=11665); *see also* § 2.01, St. Johns County Beach Code (codifying as a "legislative fact" the public's customary use of the area's beaches) (available at http://www.sjccoc.us/minrec/ordinancebooks/2007/ORD2007-19.pdf).

would fall upon the court to evaluate and adjudicate the alleged affirmative defense. The fact that a court has evaluated an affirmative defense of customary use in a particular case and, in so doing, recognized that members of the public may acquire rights to use the dry sand areas of a beach through custom, however, does not bestow upon the judiciary the "exclusive role" of determining customary use, as the Plaintiffs erroneously suggest, or otherwise negate the broad home rule powers granted to the County pursuant to the Florida Constitution and Section 125.01, *Florida Statutes*.

Indeed, in *Patch Enterprises, Inc. v. McCall*, 447 F. Supp. 1075 (M.D. Fla. 1978), the court rejected a similar "judicial determination" argument with respect to the abatement of nuisances. In so doing, the district court stated the "fact that plaintiffs' particular business activity, which is included within the scope of the ordinance's prohibition, might also be subject to a court injunction as a public or private nuisance in no way invalidates the county's proper exercise of its police power to enact the ordinance." *Id.* at 1082-83. The same reasoning applies in this case – that being, the fact that the Plaintiffs' property could be subject to a judicial determination regarding customary use rights in no way invalidates the County's proper exercise of its home rule powers in regulating and protecting the dry sand

areas of the beaches in Walton County through the adoption of the Customary Use Ordinance.[6]

Lastly, any reliance by the Plaintiffs upon Sir William Blackstone's *Commentaries on the Laws of England* in their prior filings to contend that the Customary Use Ordinance constitutes an ultra vires act is misplaced. Simply put, such treatise has no bearing or legal effect on the broad home rule powers bestowed upon the County pursuant to the Florida Constitution and Section 125.01, *Florida Statutes*.

Accordingly, as demonstrated above, the County, as a matter of law, did not exceed its legislative authority in adopting the Customary Use Ordinance. Rather, the County's adoption of such Ordinance is consistent with, and authorized by, the broad home rule authority granted to the County pursuant to Article VIII, Section 1(f) of the Florida Constitution and Section 125.01, *Florida Statutes*. Consequently, the County is entitled to summary judgment on Count IV of the Plaintiffs' Second Amended Complaint as such claim is without merit as a matter of law.

---

[6] The Plaintiffs' suggestion in prior filings that Article V, Section 20(c)(3) of the Florida Constitution renders the County's adoption of the Customary Use Ordinance ultra vires because circuit courts in Florida have jurisdiction over "all actions involving the titles and boundaries or right of possession of real property" is similarly without merit. Article V, Section 20(c)(3) of the Florida Constitution is not a limitation on the County's broad home rules powers. Rather, it simply provides that a Florida "circuit court," as opposed to a Florida "county court," has jurisdiction to hear lawsuits involving boundary and real property disputes.

## IV.

## CONCLUSION

In sum, for the reasons set forth above, the County is entitled to judgment as a matter of law on Count IV of the Plaintiffs' Second Amended Complaint.

WHEREFORE, Defendant WALTON COUNTY, FLORIDA, moves the Court for an Order:

A. Granting final summary judgment in favor of Defendant Walton County, Florida, and against the Plaintiffs on Count IV of the Second Amended Complaint; and

B. Granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this 1st day of March 2017.


WARNER LAW FIRM, P. A.
/s/ *William G. Warner*
WILLIAM G. WARNER, ESQUIRE
Florida Bar No. 0346829
TIMOTHY M. WARNER, ESQUIRE
Florida Bar No. 0642363
Post Office Box 1820
Panama City, Florida 32402
Phone No. (850) 784-7772
Facsimile No. (850) 784-7756
pleadings@warnerlaw.us

THERIAQUE & SPAIN
/s/ *David A. Theriaque*
DAVID A. THERIAQUE, ESQUIRE
Florida Bar No. 832332
S. BRENT SPAIN, ESQUIRE
Florida Bar No. 320810
433 North Magnolia Drive
Tallahassee, Florida 32308
Phone No. (850) 224-7332
Facsimile No. (850) 224-7662
dat@theriaquelaw.com
sbs@theriaquelaw.com

COUNSEL & CO-COUNSEL FOR DEFENDANT WALTON COUNTY, FLORIDA

OFFICE OF THE COUNTY ATTORNEY

/s/ *Mark D. Davis*
MARK D. DAVIS, ESQUIRE
Florida Bar No. 0764700
SIDNEY N. NOYES, ESQUIRE
Florida Bar No. 84923
161 E. Sloss Avenue
DeFuniak Springs, Florida 32433
Phone No. (850) 892-8110
Facsimile No. (850) 892-8471
mdd@co.walton.fl.us
noysidney@co.walton.fl.us

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I HEREBY CERTIFY that the foregoing Motion for Partial Summary Judgment and Incorporated Memorandum of Law complies with the word count limit prescribed in N.D. Fla. Loc. R. 7.1 and contains 4,661 words.

/s/ *David A. Theriaque*
DAVID A. THERIAQUE, ESQUIRE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the *CM/ECF* system and served a copy thereof via Electronic Mail to:

D. Kent Safriet, Esquire
Mohammad O. Jazil, Esquire
Jonathan H. Maurer, Esquire
Hopping Green & Sams, P.A.
119 South Monroe St., Suite 300
Tallahassee, Florida 32301-1529
kents@hgslaw.com
mohammadj@hgslaw.com
jonm@hgslaw.com

/s/ *David A. Theriaque*
DAVID A. THERIAQUE, ESQUIRE